Anthony Lopez Parker was indicted for theft of property in the first degree, in violation of § 13A-8-3, Code of Alabama 1975. He was tried in a joint trial with two co-defendants. The petit jury found the appellant "guilty as charged in the indictment," and the trial judge thereafter sentenced him to 30 years' imprisonment and ordered him to pay a minimum one-third portion of $5,850.00 in restitution.
During the early morning hours of August 4, 1988, Ware Jewelers in Opelika, Alabama, was broken into and numerous gold chains were taken from the store. A short time after the break-in, two Opelika police officers stopped a vehicle matching the description of a vehicle seen leaving the parking lot of Ware Jewelers. The appellant and his two co-defendants were in the vehicle at the time. Several gold chains were found on the floorboard of the vehicle. Consequently, the appellant and his co-defendants were arrested and charged with theft of the jewelry.
 I
The appellant first contends that the district attorney discriminatorily struck blacks from the jury venire in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986).
In Batson, the United States Supreme Court held that, upon a prima facie showing by the defendant of discrimination by the prosecutor in the jury selection process, the burden shifts to the prosecutor to show that he struck the questioned jurors for race-neutral reasons. See Ex parte Branch, 526 So.2d 609,618-19 (Ala. 1987). In an attempt to meet his initial burden, the accused must show some evidence of the alleged purposeful discrimination. Some examples of factors that may be considered are set out in Batson and Branch and in other opinions of our state appellate courts. See, e.g., Harrell v. State,555 So.2d 263 (Ala. 1989); Robinson v. State, 545 So.2d 828
(Ala.Cr.App. 1989).
In support of his position at trial, the appellant argued that the district attorney used his peremptory strikes numbers 2 through 8, 13, 14, 16, 17, 20, and 22 to remove blacks from the venire panel. The appellant noted that 29.5% of the jury venire panel (or 18 veniremen) were black, that 78% of the blacks (or 14 of 18) on the panel were struck by the district attorney. *Page 383 
Furthermore, the appellant pointed out that the district attorney used 56% of his peremptory strikes (or 14 of 25 strikes) to remove blacks from the venire panel.
The district attorney responded by pointing out that 4 of the 12 jurors chosen were black. He stated that this closely approximated the white-to-black population ratio in Lee County, Alabama. This fact was not contested by the appellant. SeeAllen v. State, 555 So.2d 1185 (Ala.Cr.App. 1989); Currin v.State, 535 So.2d 221, 224 (Ala.Cr.App.), cert. denied,535 So.2d 225 (Ala. 1988).
Based on this evidence, the trial judge held that the appellant had failed to make out a prima facie case and, thus, refused to require the district attorney to state his reasons for striking the questioned black veniremen. The appellant argues that this decision was error.
We note initially that, on similar facts, this court has previously remanded cases and ordered the respective trial judges to make further findings of fact in accordance withBatson. See Smith v. State, 531 So.2d 1245, 1246-47
(Ala.Cr.App.), cert. denied (Ala. 1987) (D.A. used 13 of 14 strikes to remove blacks from venire); Owes v. State,512 So.2d 797, 798 (Ala.Cr.App. 1987) (D.A. used first 3 strikes to remove blacks from a panel which included 9 blacks on a 32-person panel and, overall, D.A. used 6 of 10 strikes to remove blacks); Samuels v. State, 504 So.2d 367, 367-68
(Ala.Cr.App. 1987) (D.A. used first 3 strikes to remove blacks, where 8 of 27 veniremen were black). Each of those three cases, however, was remanded on the authority of Ex parte Jackson,516 So.2d 768, 770-73 (Ala. 1986), which held that Batson was to be retroactively applied. Likewise, we remanded the case ofShelton v. State, 521 So.2d 1035, 1036-37 (Ala.Cr.App. 1987),cert. denied, 521 So.2d 1038 (Ala. 1988) (D.A. used 8 of 9 strikes to remove blacks from the venire panel), to determine the reasons for the removal of blacks. Shelton, however, was based on this court's opinion in Smith, supra.
The cause sub judice does not, like the cases cited immediately above, involve a retroactive application issue. Rather, it appears that the trial judge, on the authority ofBatson and Branch found that the appellant failed to make out a prima facie case.
Furthermore, the dangers that existed in Shelton, Smith,Owes, and Samuels no longer exist. The trial judges of this state have had ample opportunity to become familiar with the standards and factors of Batson and Branch and to apply them in numerous fact situations in the jury selection process.
This court addressed a similar situation in Lowe v. State,548 So.2d 1086 (Ala.Cr.App.), cert. denied, 548 So.2d 1087
(Ala. 1989). In Lowe, the venire panel consisted of 27 members, 10 of whom were black. The district attorney used four of his seven strikes to remove blacks from the venire. Six black jurors served on the ultimate jury.
In Lowe, we held that the appellant had failed to meet the third requirement of Batson, 476 U.S. at 96, 106 S.Ct. at 1722
("that these factors and any other relevant factors raise an inference that the prosecutor used that practice to exclude veniremen from the petit jury on account of their race"). In so holding, we stated:
 "A showing that approximately 37% of the jury venire was black and approximately 57% of the jurors struck by the State were black is not sufficient in this case to raise an inference that the State exercised its peremptory strikes in a racially discriminatory manner. See Phillips v. State, 496 N.E.2d 87 (Ind. 1986) (the State's removal of three of the four black jurors from a venire of 29 did not, in and of itself, raise an inference of racial discrimination)."
Lowe, 548 So.2d at 1087.
In Robinson, 545 So.2d at 833, the district attorney used four of seven strikes to remove blacks from the venire, where nine of the veniremen were black. We held that the trial court's finding that the appellant failed to present a prima facie case of discrimination was not error. We observed that, other than these numbers, the appellant *Page 384 
made no showing of racial discrimination.
 "The appellant fails to establish any evidence of a pattern or systematic exclusion of blacks from the venire; nor did he present any evidence of statements or questions by the prosecutor during voir dire or while exercising his challenges implying intentional discrimination; nor has he shown any past conduct by the prosecutor in striking blacks from the jury; nor has he shown any disparate treatment or examination of members of the venire."
Robinson, 545 So.2d at 833. See also Speights v. State,522 So.2d 330, 330-31 (Ala.Cr.App. 1988) (defendant's blanket assertion of racial discrimination, without more, where five of the ultimate jurors were black, failed to make out a prima facie case).
Great confidence is placed in our trial judges in the selection of juries. Because they deal on a daily basis with the attorneys in their respective counties, they are better able to determine whether discriminatory patterns exist in the selection of juries. See Davis v. State, 555 So.2d 309, 312
(Ala.Cr.App. 1989).
While trial judges should not "lightly brush . . . aside" an accused's Batson claim or "require a strict or rigid quantum of proof," Harrell, 555 So.2d at 268, an appellant still must make some showing that the prosecutor used his peremptory strikes in a purposefully discriminatory manner. This is true especially where, as here, several of the jurors selected are black. SeeAllen; Currin.
We, thus, find no error in the trial judge's failure to determine that the appellant made a prima facie showing of racial discrimination.
 II
The trial judge, in his oral charge to the jury, stated as follows:
 "Now the defendants in these cases, ladies and gentlemen, are charged with an offense known as Theft of Property in the First Degree, and I will tell you what Theft of Property is and the first degree is and, also, the second degree and the third degree. The only difference in the degrees being the question of value. And it is for you to determine if all of the facts are established, as they have to prove all of the elements of guilt, to determine, then, the value. As I'm telling you this, I remind you that you people are the sole judges as to the weight and credibility that should be given to the testimony of the witnesses.
". . . .
 "What is theft of Property in the First Degree? Theft of Property in the First Degree means the theft of property which exceeds $1,000 in value, is theft of Property in the First Degree.
 "Theft of Property in the Second Degree, ladies and gentlemen of the jury, is property — the value of the property exceeds $100 in value but does not exceed $1,000 in value.
 "Theft of Property in the Third Degree is property having a value of $100 or less. So those are the three definitions of theft. Theft one, two, and three."
(R. 686-87.) (Emphasis added.) These definitions were based on §§ 13A-8-3(a), -4(a), and -5(a), Code of Alabama 1975.
At the conclusion of the trial judge's oral charge, this appellant challenged that portion of the charge that indicated that "[t]he only difference" between first, second, and third degree theft was the "value" of the property. Specifically, the appellant pointed out § 13A-8-4(e), Code of Alabama 1975, to the trial judge.
Section 13A-8-4(e) states: "The theft of property which exceeds $25.00 in value, and which is taken from or in a building where said property is sold or stored, constitutes theft of property in the second degree."
In response to the appellant's objection, the trial judge acknowledged that "value" was not the only difference between the three degrees of theft, "but under the facts and circumstances of this case" (R. 699-700), he did not find any other relevant differences. The trial judge also noted that the requested charge of § 13A-8-4(e) *Page 385 
would not benefit the appellant (to which the appellant agreed) and that the indictment did not charge the appellant with that form of theft.
We agree with the trial judge's observations and conclusions. This court, in Craig v. State, 410 So.2d 449, 453
(Ala.Cr.App. 1981), cert. denied (Ala. 1982) (addressing an equal protection challenge to § 13A-8-4(e)), addressed the differences between the forms of theft under § 13A-8-4(a) and (e), Code of Alabama 1975:
 "Sections 13A-8-4(e) and 13A-8-4(a) proscribe different conduct. Section 13A-8-4(e), as used in this case, proscribes that conduct which is commonly known as shoplifting. It requires no recitation of authority for this court to recognize the seriousness of this widespread and costly problem. The legislature by enacting § 13A-8-4(e) obviously intended to provide stiff penalties for those persons caught engaging in that conduct in our state.
 "On the other hand, § 13A-8-4(a) proscribes that conduct which includes, but is not necessarily limited to, theft of property from a person's home or office."
The cause sub judice involved a situation where the front window of Ware Jewelers was broken out with a tire jack. The perpetrators then entered the building, which was not open for business at the time, and stole numerous gold chains from one of the display counters.
The appellant's argument presumes that, since § 13A-8-4(e) does not have a maximum dollar limit, then all property illegally taken from a "building" with a value in excess of $25.00 must be classified as theft of property in the second degree. This argument is without merit, since this court has previously affirmed an accused's conviction for theft of property in the first degree where the value of the property taken was shown to exceed $1,000.00 and where the property was taken from a "building." See Hurst v. State, 402 So.2d 1124
(Ala.Cr.App. 1981) (involving burglary and theft of a residence); Smith v. State, 401 So.2d 185 (Ala.Cr.App.), cert.denied, 401 So.2d 187 (Ala. 1981) (involving burglary and theft of a department store, where burglary charge was dismissed and the defendant was found guilty of theft of property in the first degree only).
Furthermore, charging the jury on matters not in evidence is not error unless doing so would tend to mislead the jury.See Coleman v. State, 443 So.2d 1355, 1358 (Ala.Cr.App. 1983),cert. denied (Ala. 1984). Therefore, the trial judge's charge, in the context of the facts and circumstances of this case, was not error. See Ex parte Tomlin, 443 So.2d 59, 64 (Ala. 1983),cert. denied, 466 U.S. 954, 104 S.Ct. 2160, 80 L.Ed.2d 545
(1984); Van Antwerp v. State, 358 So.2d 782, 786 (Ala.Cr.App.),cert. denied, 358 So.2d 791 (Ala. 1978).
For the reasons stated, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.