**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1971-18T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RASHAUN BELL, a/k/a
BG RASHAUN RAH,

     Defendant-Appellant.

_____

Argued telephonically May 6, 2020 –
Decided May 21, 2020

Before Judges Haas and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-12-0812.

Susan Lee Romeo, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Susan Lee Romeo, of counsel and on the brief).

Erin M. Campbell, Assistant Prosecutor, argued the cause for respondent (Esther Suarez, Hudson County Prosecutor, attorney; Erin M. Campbell, on the brief).

PER CURIAM

After the trial judge denied his motion to dismiss one of the two counts of a Hudson County indictment charging him with second-degree leaving the scene of an accident resulting in the death of another person, N.J.S.A. 2C:11-5.1, defendant Rashaun Bell pled guilty to both counts. The judge sentenced defendant to consecutive five-year prison terms on each charge.

Defendant reserved the right to appeal the denial of his motion to dismiss and raises the following contention:

> POINT I
>
> ONE OF DEFENDANT'S TWO CONVICTIONS AND HIS CONSECUTIVE SENTENCE FOR LEAVING THE SCENE OF THE SAME ACCIDENT MUST BE VACATED, BECAUSE THE MULTIPLE CHARGES FOR A SINGLE CRIMINAL ACT VIOLATED DOUBLE JEOPARDY PROTECTIONS AGAINST MULTIPLE PUNISHMENTS FOR THE SAME OFFENSE.

For the reasons that follow, we reverse one of defendant's convictions because the State violated the rule against multiplicity. Where a defendant leaves the scene of a single accident that resulted in the death of another person, the State may not properly charge him or her with multiple counts of this offense based on the number of victims who died in the accident. Instead, and as expressly permitted by N.J.S.A. 2C:11-5.1, the State may address the harm to

2

victims by charging the defendant, as appropriate, with aggravated manslaughter under N.J.S.A. 2C:11-4, reckless vehicular homicide under N.J.S.A. 2C:11-5, or strict liability vehicular homicide under N.J.S.A. 2C:11-5.3.

## I.

The parties do not dispute the proofs presented by the State to the grand jury concerning the accident. At approximately 2:25 p.m. on October 18, 2017, defendant was driving a car northbound on the Secaucus off-ramp for Routes 1 and 9 in Jersey City. Defendant did not have a driver's license. There were three other passengers in defendant's car.

At the same time, two boys, ages fifteen and sixteen, were riding a bicycle westbound down a very steep hill on Leonard Street, which intersected with the road on which defendant was traveling. One of the boys was standing up and pedaling the bicycle, while the other boy was seated.

Defendant's car and the boys' bicycle entered the intersection simultaneously and, as the trial found, "the car and the bicycle impacted at [an] 'almost perpendicular angle.' This was not a head-on collision or rear-end collision." Defendant and his three passengers got out of the car and fled the scene. One of the boys was killed in the accident, and the other boy died the next day at the hospital.

Following a police investigation, defendant was identified as the car's driver. The grand jury charged defendant under N.J.S.A. 2C:11-5.1 with one count of second-degree leaving the scene of an accident that resulted in the death of one of the boys, and another count for the same offense for the other boy.

Defendant filed a motion to dismiss one of the two counts. He argued that under the doctrine of multiplicity, the State could only charge him once for violating N.J.S.A. 2C:11-5.1 because the facts asserted by the State demonstrated that he left the scene of a single accident, which would only support a conviction for one offense regardless of the number of victims fatally harmed as the result of that accident.

The trial judge denied defendant's motion. In a brief oral decision, the judge reasoned that as a result of the accident, there were two victims and, therefore, it was appropriate to charge defendant with two counts of violating N.J.S.A. 2C:11-5.1. The judge also stated that the statute permitted a sentencing court to "impose[] multiple sentences of imprisonment for more than one offense," and to run those sentences "consecutively."

II.

As noted above, defendant's argument on appeal is based upon the doctrine of multiplicity. As our former colleague Judge Susan L. Reisner

4 <span>A-1971-18T3</span>

recently explained, "the rule against multiplicity prohibits the State from charging a defendant with multiple counts of the same crime, when [the] defendant's alleged conduct would only support a conviction for one count of that crime." State v. Hill-White, 456 N.J. Super. 1, 11 (App. Div. 2018). Stated differently, "a defendant may not be tried for two identical criminal offenses in two separate counts based upon the same conduct." State v. Salter, 425 N.J. Super. 504, 515-16 (App. Div. 2012) (citing State v. Widmaier, 157 N.J. Super. 475, 489-90 (1999)). "Thus, '[m]ultiplicity occurs when a single offense is charged in several counts of an indictment.'" Hill-White, 456 N.J. Super. at 11-12 (alteration in original) (quoting State v. Evans, 189 N.J. Super. 28, 31 (Law Div. 1983)).

Significantly, "[t]he bar against multiplicity relates to the Double Jeopardy principle prohibiting 'multiple punishments for the same offense.'" Id. at 12 (quoting Salter, 425 N.J. Super. at 515-16). "While multiplicity begins as a charging error, it can obviously result in a defendant being improperly convicted of multiple crimes, when he or she only committed one crime." Ibid. (citing Evans, 189 N.J. Super. at 31-32).

To remedy a multiplicity issue, a court may "set[] aside all but one of the multiple convictions after the verdict." Ibid. However, "the better approach is

A-1971-18T3

to address the issue before trial by dismissing the improperly duplicative counts of the indictment." Ibid. (citing Evans, 189 N.J. Super. at 32).

## III.

Our standard of review is well settled. An appellate court will generally review a trial judge's decision on a motion to dismiss an indictment "under the deferential abuse of discretion standard." State v. Twiggs, 233 N.J. 513, 532 (2018) (citing State v. Hogan, 144 N.J. 216, 229 (1996)). However, where, [as here,] the judge's decision involves "a purely legal question, . . . we review that determination de novo." Ibid. (citing State v. Cagno, 211 N.J. 488, 505-06 (2012)). We apply a similar "de novo review to issues of statutory interpretation." Garden State Check Cashing Servs. v. State Dep't of Banking & Ins., 237 N.J. 482, 489 (2019) (citing Kocanowski v. Township of Bridgewater, 237 N.J. 3, 9 (2019)).

"The Legislature's intent guides us in deciding the meaning of statute" like N.J.S.A. 2C:11-5.1. Twiggs, 233 N.J. at 532 (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). In making this determination, we begin by examining the statute's plain language because that is the "'best indicator' of legislative intent." State v. Rodriguez, 238 N.J. 105, 113 (2019) (quoting DiProspero, 183 N.J. at 492). "A statute's plain language must be construed 'in context with related

A-1971-18T3

provisions so as to give sense to the legislation as a whole." Ibid. (quoting Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018)). In examining the words of a statute, we "attribute to them their ordinary meaning." Hill-White, 456 N.J. Super. at 13 (citing State v. Malik, 365 N.J. Super. 267, 274 (App. Div. 2003)).

If the statute's plain language is clear and unambiguous, our inquiry ends and we will enforce the statute as written. Rodriguez, 238 N.J. at 114. However, if the language is not clear, or "leads to more than one plausible interpretation," extrinsic evidence, including the relevant legislative history, may be examined. Ibid. (quoting DiProspero, 183 N.J. at 492-93). "We consider words and phrases within the statute 'not only in their own contextual setting, but in relation to surrounding provisions in the statutory scheme.'" Hill-White, 456 N.J. Super. at 13 (quoting Malik, 365 N.J. Super. at 276).

In construing a legislative enactment, "we must be careful not to 'rewrite [the] statute or add language that the Legislature omitted.'" Twiggs, 233 N.J. at 533 (quoting State v. Munafo, 222 N.J. 480, 488 (2015)). When both a plain language analysis and the use of extrinsic evidence do not resolve an ambiguity in a penal statute, "the ambiguity [must] be resolved in favor of the defendant." Rodriguez, 238 N.J. at 114 (quoting State v. Regis, 208 N.J. 439, 451 (2011)).

IV.

Applying these principles, we are satisfied that the plain language of N.J.S.A. 2C:11-5.1 makes it a single crime to leave the scene of an accident that results in the death of another person regardless of the number of individuals fatally injured in that accident. In pertinent part, the statute states:

> A motor vehicle operator who knows he is involved in an accident and knowingly leaves the scene of that accident under circumstances that violate the provisions of [N.J.S.A.] 39:4-129[1] shall be guilty of a crime of the second degree if the accident results in the death of another person.

According to the plain language of the statute, the focus is upon a driver who leaves the scene of an accident that results in the death of another person. Thus, N.J.S.A. 2C:11-5.1 punishes a defendant's knowing decision to leave the scene of an automobile accident in which that person was involved if the accident results in the death of any other person. A violation of the statute occurs whenever a driver leaves the site, regardless of whether that person is at

---

[1] N.J.S.A. 39:4-129 provides that the driver of a vehicle, who is knowingly involved in an accident that results in injury or death to any person, must remain at the scene and provide his identification and driving credentials to any police officer or witness, and the driver or passengers. The driver must also render "reasonable assistance" to anyone injured in the accident. Ibid.

fault with respect to the accident and regardless of the number of victims involved. The violation is complete once the driver leaves the accident scene.

Because N.J.S.A. 2C:11-5.1 criminalizes the act of leaving the scene of an accident that results in the death of someone else, and given that there can only be one act of leaving the scene of that accident, a defendant may only be charged with a single violation of the statute for any single accident, regardless of the number of victims. Thus, defendant clearly violated N.J.S.A. 2C:11-5.1 when he left the scene of the accident after the bicycle carrying the two boys collided with his car. However, based upon the plain language of the statute, he could only be charged with a single violation of this enactment.[2]

As the Legislature went on to state in N.J.S.A. 2C:11-5.1, the number of victims harmed does matter for any other offenses committed by defendant in connection with the accident. Thus, the Legislature made clear that nothing in N.J.S.A. 2C:11-5.1 "preclude[s] an indictment and conviction for aggravated manslaughter[,] . . . reckless vehicular homicide[,] . . . or strict liability vehicular

---

[2] Nothing in the documented legislative history of N.J.S.A. 2C:11-5.1 lends credence to the State's assertion that the Legislature intended to permit multiple charges for this offense if there were multiple victims, but only a single accident. We have examined the bill and committee statements for each iteration of the statute, and they are silent on the question. See L. 1997, c. 111, § 3; L. 2003, c. 55, § 3; L. 2007, c. 83, § 2; L. 2017, c. 165, § 4.

A-1971-18T3

homicide." In addition, the Legislature made clear that if a defendant is convicted for any of these offenses, that conviction does not merge with a conviction for leaving the scene of an accident resulting in the death of another person. N.J.S.A. 2C:11-5.1. Finally, the Legislature stated that "when the court imposes multiples sentences of imprisonment for more than one offense, those sentences shall run consecutively." Ibid.

The State relies upon the consecutive sentence provision quoted above in arguing that the statute permits multiple counts for violating N.J.S.A. 2C:11-5.1 based on the number of victims resulting from the accident. It asserts that the Legislature would not have required the imposition of consecutive sentences if it intended that a driver could only be charged with one violation of leaving the scene of an accident involving multiple victims.

However, the State's interpretation, which the trial court incorrectly accepted, ignores the placement of this provision directly following the anti-merger provision that specifies the crimes to which it applies. Having provided that convictions for manslaughter or vehicular homicide that arise from the same accident may not merge with a conviction for leaving the scene of that accident, the Legislature obviously intended to ensure that the sentences for manslaughter

or homicide would be served consecutively to any sentence imposed for leaving the scene of that accident.

This intent becomes even clearer when the language of companion legislation, N.J.S.A. 2C:12-1.1, is examined. N.J.S.A. 2C:12-1.1 states that "[a] motor vehicle operator who knows he is involved in an accident and knowingly leaves the scene of that accident . . . shall be guilty of a crime of the third degree if the accident results in serious bodily injury to another person." Both N.J.S.A. 2C:11-5.1 and N.J.S.A. 2C:12-1.1 were enacted as sections one and two of the same law. L. 1997, c. 111, §1 and §2. It is well established that "[s]tatutes that deal with the same matter or subject should be read in pari materia and construed together as a unitary and harmonious whole." St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 14-15 (2005) (emphasis in original) (internal quotation marks and citations omitted).

N.J.S.A. 2C:12-1.1 contains similar anti-merger and consecutive sentence provisions to those set forth in N.J.S.A. 2C:11-5.1. These provisions state:

> [A] conviction arising under this section shall not merge with a conviction for aggravated assault or assault by auto under the provisions of N.J.S.A. 2C:12-1 and a separate sentence shall be imposed upon each conviction.
>
> . . . [W]henever in the case of such multiple convictions the court imposes multiple sentences of imprisonment

for more than one offense, those sentences shall run consecutively.

[N.J.S.A. 2C:12-1.1.]

Thus, the Legislature explicitly recognized in the anti-merger and consecutive sentence provisions of both statutes that, although an accident may result in injury or death, the person who left the scene may not have been the cause of the accident that resulted in that harm. But, if the person who left the scene also caused the accident, he or she can be charged with the appropriate assault or homicide crime for causing the injury or death, and the sentence for that crime will be served consecutively to any sentence for the charge of leaving the scene. Thus, we reject the State's contention that these provisions permitted it to charge defendant with two counts of leaving a single accident scene.

In support of its position, the State mistakenly relies upon our decision in State v. Atwater, 400 N.J. Super. 319, 323 (App. Div. 2008), where a jury found the defendant guilty of two counts of violating N.J.S.A. 2C:11-5.1 in a case where he left the scene of an accident that resulted in the death of two victims.[3] However, the defendant did not challenge these convictions on multiplicity grounds and, instead, successfully asserted he was entitled to a new trial because

---

[3] The jury also found the defendant guilty of two counts of first-degree vehicular homicide. Id. at 323.

of errors the trial judge made in the jury instructions.  Id. at 327-333.  Therefore, this case has no relevance to the matter at hand.

However, it is significant to note that even though the jury convicted the defendant of two counts of violating N.J.S.A. 2C:11-5.1, the trial judge merged those convictions for purposes of sentencing the defendant to a single, three-year term for the merged offense.  Id. at 323.[4]  Thus, if anything, the Atwater decision supports the conclusion that a defendant may only be charged with, and sentenced for, a single count of violating N.J.S.A. 2C:11-5.1 regardless of the number of victims involved.

The State also notes that the defendant in an unpublished decision, State v. Askew, No. A-0516-14 (App. Div. Mar. 23, 2017), was found guilty of two counts of leaving the scene of an accident that resulted in the death of two individuals.  Again, however, the defendant in that case did not raise a multiplicity doctrine defense and, therefore, we give little weight to this decision.  See also R. 1:36-3 (stating that "[n]o unpublished opinion shall constitute precedent or be binding upon any court").

---

[4]  The judge imposed consecutive sentences for each of the two vehicular homicide counts.  Ibid.

We are more persuaded by the overwhelming weight of the out-of-state judicial authority discussing very similar statutes enacted in other jurisdictions to criminalize a driver's conduct for leaving the scene of a fatal accident. Although these decisions are not binding on us, Hill-White, 456 N.J. Super. at 22, "New Jersey courts often look to out-of-state decisions for purposes of interpreting statutory language when there is no precedent in New Jersey that is of assistance, particularly when the out-of-state cases deal with language that is similar to New Jersey's statutory language." McKesson Water Prods. Co. v. Dir., Div. of Taxation, 23 N.J. Tax 449, 457 (2007).

That is the case here. For example, Arizona's statute provides that "a driver who causes an accident resulting in death or serious physical injury and who fails to stop . . . is guilty of a . . . felony." State v. Powers, 26 P.3d 1134, 1134-35 (Ariz. 2001) (citing A.R.S. § 28-661). In Powers, the defendant was charged and convicted of two counts of violating the statute when he caused an accident, which killed one person and injured an infant, and then fled the scene. Id. at 1134. On appeal, the Arizona Supreme Court concluded that the defendant could only be charged with one violation for leaving the scene of the accident under the plain meaning of the terms "accident" and "scene of the accident." Id.

A-1971-18T3

at 1135.  The court added that "primary purpose" of the statute was "scene-related, not victim related."  <u>Ibid.</u>

Similarly, in <u>Dake v. State</u>, 675 So. 2d 1365, 1366 (Ala. Crim. App. 1995), the defendant was involved in an accident in which four passengers in a mule-pulled wagon were injured.  He was charged with, and convicted of, four counts of violating an Alabama statute requiring a driver in an accident resulting in death or injury to remain at the scene and render assistance.  <u>Ibid.</u>  On appeal, the court vacated three of the defendant's four convictions after concluding that because defendant left only one accident scene, he could not be charged with multiple violations regardless of the number of victims involved in the accident. <u>Id.</u> at 1367-68.

Likewise, in <u>Brown v. State</u>, 793 S.E.2d 573, 579-80 (Ga. Ct. App. 2016), the court concluded that the "defendant may only be charged with a single violation of the [Georgia] hit-and-run statute for any single accident regardless of the number of victims" because that statute "criminalizes the act of failing to stop at the scene of an accident, and . . . there can be only one failure to stop at any single accident."  The court added that a defendant can still "be charged separately with respect to the injuries inflicted on each victim of a single

15

accident" through, for example, an indictment for aggravated assault or vehicular homicide. Id. at 580.

The holdings in Powers, Dake, and Brown are consistent with those reached by courts in other states with statutes similar to N.J.S.A. 2C:11-5.1. These courts all concluded that if the defendant leaves the scene of a single accident, he or she may only be charged with one count of violating a statute criminalizing that conduct, regardless of the number of victims harmed in the accident. See, e.g., Lee v. District of Columbia, 22 A.3d 734, 741-42 (D.C. 2011) (concluding that a statute requiring the driver to remain at the scene of an accident where a person is injured is an "accident-focused" statute rather than a "victim-specific" or "victim-focused" statute); People v. Sleboda, 519 N.E.2d 512, 522 (Ill. App. Ct. 1988) (holding that a statute prohibiting leaving the scene of an accident involving a death "itself indicates that an individual can only be convicted once for leaving the scene of one accident"); Firestone v. State, 83 P.3d 279, 282 (Nev. 2004) (finding that a violation of a statute requiring a driver involved in an accident resulting in death or serious bodily injury to remain at the scene "does not depend on the number of people injured" and, because "there was only one accident, and one 'leaving,' the statute allows only one charge of leaving the scene of an accident, regardless of the number of people involved");

16

State v. Ustimenko, 151 P.3d 256, 260 (Wash. Ct. App. 2007) (holding that "[t]he unit of prosecution is the act of leaving the scene of an accident," rather than the number of individuals injured in the accident); State v. Stone, 728 S.E.2d 155, 165 (W. Va. 2012) (concluding that a driver who fails to remain at the scene of an accident that resulted in an injury or death of any person "violates [the statute] only once regardless of the number of injuries or deaths resulting from the accident").

V.

In sum, the plain language of N.J.S.A. 2C:11-5.1 clearly indicates that a defendant may only be charged with one violation of leaving the scene of an accident that results in the death of another person regardless of the number of individuals fatally harmed in the accident. Nothing in the available legislative history of this enactment suggests, much less compels, a different result. This interpretation is also consistent with out-of-state judicial decisions construing similar statutes, which all reach the same conclusion.

Accordingly, we reverse one of defendant's two convictions of second-degree leaving the scene of an accident under N.J.S.A. 2C:11-5.1, and we vacate the sentence imposed for this conviction. We amend the remaining count of second-degree leaving the scene of an accident to include both boys who died

as a result of that accident, and affirm that conviction and the five-year sentence previously imposed on that count. We remand to the trial court for the limited purpose of issuing an amended judgment of conviction consistent with this opinion.

Affirmed in part; reversed in part; and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1971-18T3